## AMERICAN DIST. TELEGRAPH CO. OF TEXAS et al. v. WALSH & BURNEY CO. et al.

### No. 11213.

Court of Civil Appeals of Texas.
San Antonio.

Dec. 2, 1942.

Rehearing Granted April 14, 1943.

Rehearing Denied May 26, 1943.

Francis R. Stark, of New York City, and Henry B. Dielmann and Goeth, Webb & Goeth, all of San Antonio, for appellant.

Denman, Franklin & Denman, Eskridge & Groce, and Johnson & Rogers, all of San Antonio, for appellees.

PER CURIAM.

In San Antonio what was known as the Conroy Building was situated on the north end of the 100 block of North Alamo Street. The remainder of the block was occupied by the main building of a department store operated by Joske Bros. Company, a corporation, to be hereinafter called "Joske," for convenience. The two buildings, both owned by Joske, were separate but connected structures and Joske's store occupied both. For protection from fire hazards the two buildings were equipped with a continuous automatic sprinkling system operated by American District Telegraph Company, incorporated (herein called "A. D. T."), under a contract with Joske.

Joske decided to replace the Conroy Building with a new addition to conform to and become a continuation of the main.

store building. This plan required the destruction and removal of the Conroy Building and construction of the new addition in its place. This included the disconnection and discontinuation of that part of the sprinkler system which served the Conroy Building.

To this end Joske employed Walsh and Burney, a corporation, as an independent contractor, to demolish and remove the old Conroy plant and construct the new. As a part of the transaction Walsh and Burney acquired ownership of the old structure and all the Joske materials salvageable therefrom. In the process of delivering the Conroy plant to Walsh and Burney and while in the act of disconnecting that part of the sprinkler system in the Conroy Building from that part in the main store, Joske's engineer forced a defect in the cut-off valve in the sprinkler line in the Conroy Building, resulting in a slow leak of water therefrom. In the course of the demolition of the Conroy Building an A. D. T. agent went on the premises, and seeing and attempting to stop the leak, forced the valve towards a close, thereby breaking it and releasing the water in such volume that it flowed into the basement of Joske's main store, damaging a stock of goods therein belonging to Sid Katz, another corporation. Katz was indemnified for its loss by its insurance carrier, which brought this suit, in Katz's name, against Walsh and Burney and A. D. T. to recover the agreed amount of the Katz loss. Walsh and Burney and A. D. T. in turn impleaded Joske and Jud Heating and Plumbing Company, a subcontractor, and prayed for judgment over against them. As indicated above, all the parties are corporations.

The cause was tried to the court without a jury and judgment was rendered in favor of Katz against A. D. T. alone, without recovery over. A. D. T. has appealed. No complaint is made of the judgment in favor of the Jud Company, which will not be disturbed in any event.

While the facts in the main are undisputed they are nevertheless quite tedious and difficult to summarize. The trial court filed elaborate findings of fact upon all the intricate elements of the case. None of those findings are challenged on this appeal by any of the parties except A. D. T. We now quote findings deemed controlling in this appeal:

"4. That said (Joske) department store building was equipped with a sprinkler system used as protection against fire hazards; that in the main building there were five main pipes or 'risers' which supplied the sprinkler system with water and that there was one riser in the Conroy Building. That these risers were numbered from 1 to 6, inclusive, and the one located in the Conroy Building was numbered 6.

"5. That Joske Bros. Company and the defendant, American District Telegraph Company of Texas, had entered into contracts whereby the defendant, American District Telegraph Company of Texas, maintained certain alarm signaling devices for the protection of said premises against fires, burglaries and similar depredations, including signals attached to and made a part of the sprinkler system and under such contracts it was their duty to inspect said devices and the valves and installation of the sprinkler system.

"6. Walsh & Burney Company took possesssion of the Conroy Building, and in its effort to exclude the public therefrom, constructed a temporary wall around the outside of the Conroy Building and a temporary wall between the Conroy Building and the balance of the building occupied by Joske Bros. Company, and during the day time Walsh & Burney Company had its foreman and employees in possession of the Conroy Building, and at night time, Walsh & Burney Company maintained a watchman on the premises of the Conroy Building, to exclude the public therefrom. Several weeks prior to the damage suffered by the plaintiff, Riser # 6 was completely disconnected from other portions of the sprinkler system, and from the signaling devices of the American District Telegraph Company of Texas, with the approval and knowledge of said company and knowledge of its agent, but the American District Telegraph Company of Texas, within a few feet of Riser # 6 and in the Conroy Building, still continued, without objection from any of the parties to maintain certain of its appliances known as an instrument board.

"7. Riser # 6 was equipped with a valve located in the basement of the Conroy Building, known as an O. S. & Y. valve. When this valve was closed, it would cut the water off from the sprinkler system above this valve. Riser # 6 was equipped with a drain pipe immediately above the

valve, which, when opened, would provide a means for the water in the sprinkler system above the valve to escape into the storm sewer. This O S & Y valve was broken or defective for use as part of a sprinkler system but that part having been abandoned as a sprinkler system it was sufficient for the use to which it was being put but for the negligence of said Telegraph Company. The Riser # 6, together with the sprinkler system attached thereto, including said valve, were not to be longer used as a sprinkler system, but were to be demolished. When the Conroy Building was delivered to Walsh & Burney Company the employee and representative of Joske Bros. Company, in the presence of the foreman of Walsh & Burney Company and of Jud & Ormond, securely closed the O S & Y valve, and partly opened the drain pipe, thereby providing for the escape of such water as might leak past the O S & Y valve. For a period of approximately two weeks before the accident, while the sprinkler system was being demolished above said valve, the work of demolition of the sprinkler system was done with heavy tools, including sledge hammers, resulting in jars and jolts on Riser # 6, but said valve was so securely fastened that it did not become released thereby. Walsh & Burney Company did not have knowledge of the character of the defect in said valve, but did know that it was not in perfect condition. Walsh & Burney Company had no cause to anticipate, and could not have reasonably anticipated, that the O S & Y valve which had been securely fastened, would be opened and the water released, as it was opened or released or similar to the way it was opened or released. Walsh & Burney Company depended upon the O S & Y valve holding the water. It was possible for Walsh & Burney Company to have plugged Riser # 6, either above or below the valve, and thereby prevented the escape of the water, regardless of the condition of the valve, but plugging pipes in such way during demolition work was not customary, and the said valve would have held, as it was fastened, had it not been tampered with, as hereinafter disclosed in these findings. Walsh & Burney Company was not guilty of any negligence in regard to the matters involved in this suit.

"8. That during the early morning hours of January 22, 1939, the office of the American District Telegraph Company of Texas, in San Antonio, received over its regular signal device an alarm indicating that there was trouble with the sprinkler system in Joske Bros. Company store on either riser # 4 or 5, or both. That the cause of this alarm was unknown, but that it did not in any way originate with the condition existing in riser No. 6.

"9. That when such alarm was received, one of the regular employees of the American District Telegraph Company of Texas, H. C. Staats, was dispatched to said building for the purpose of ascertaining the cause of the trouble. That he was admitted into the main building of Joske Bros. Company store by the night watchman and no trouble could be located. That the said Staats then induced the night watchman of Joske Bros. Company to take him into the Conroy Building which had been separated from Joske Bros. Company's main store building by an additional temporary wall constructed by Walsh & Burney Company, as well as by fences along the sidewalk. That when Staats entered the basement of the Conroy Building, he discovered that there was some leakage in O S & Y valve on riser No. 6. That this leakage had been going on for sometime and was known to the agents of Walsh & Burney Company; that it was being taken care of by the drain valve attached to said pipe and was doing no damage; but that such condition was not previously known to the employees of the American District Telegraph Company of Texas; that the said Staats then attempted to completely close said valve and applied force to the valve and dislocated the broken part and completely released the water in said riser No. 6 so that it flowed out at the open end above the floor and below the ceiling of the street floor of the Conroy Building. That said Riser No. 6 was either a four or five inch pipe and subject to the full pressure of the city water system.

"10. That the escaping water spread to the floor of the main building of Joske Bros. Company store and entered the basement where plaintiff's shoes were stored and displayed and caused damage to said stock of shoes to the extent of $2,688.00."

"13. That the American District Telegraph Company and its employe, Staats, were negligent in interfering with and in attempting to regulate the O S & Y valve on riser No. 6 in the basement of the Conroy Building on the date in question after it had been entirely disconnected from the alarm system maintained and operated by the said American District Telegraph

Company of Texas and had been sold to and delivered into the sole possession and control of the Walsh & Burney Company; that in entering the basement of the Conroy Building and in doing all of the things which he did there, the said Staats was acting within the scope of his employment and that his employer was liable for all of his negligence and that such negligence was the proximate cause of plaintiff's damage.

"14. That Walsh & Burney Company were not guilty of negligence in not repairing said O S & Y valve of plugging said pipe while dismantling said sprinkler system.

"15. It is further found that neither Joske Bros. Company, Jud Plumbing & Heating Company, Inc., nor the plaintiff, were guilty of any negligence in regard to the matters involved in this suit."

At A. D. T.'s request the trial judge found the following additional facts:

"1. That shortly prior to the time the Conroy Building was delivered by Joske Bros. Company to Walsh & Burney Company to be demolished, Joske Bros. Company's Engineer or Maintenance man with the aid of an employee of Jud Plumbing and Heating Company, Inc., and in the presence of the Superintendent of Walsh and Burney Company, in attempting to close the O S & Y Valve on Riser No. 6 broke said valve and the employee of Joske Bros. Company thereupon warned the Superintendent of Walsh and Burney Company that said valve was defective and should not be touched and said valve was left in that condition, partly open with water constantly leaking through the same."

"8. That the night watchman for Walsh and Burney Company was not present when the employee of the American District Telegraph Company of Texas attempted to close the O S & Y Valve on Riser No. 6."

"10. That after receiving the Conroy Building to be torn down and knowing the broken and defective condition of the O S & Y Valve on Riser No. 6 and that same was leaking, Walsh and Burney Company did not place a sign or other warning device on said valve as a precaution against attempted manipulation of same."

"13. That the employee of the American District Telegraph Company of Texas went to the Conroy Building at the time he attempted to close the O S & Y Valve because he had heard water leaking through said valve and also because he desired to inspect and set or adjust instruments of his employer situated in the same room and close to the defective O S & Y Valve on Riser No. 6.

"14. That the employee of the American District Telegraph Company of Texas had a right to go into the Conroy Building in order to inspect, set or adjust the instruments of his employer therein situated, and in so doing was not a trespasser.

"27. That if the riser had been capped above the defective O S & Y Valve on Riser # 6, no damage could have and would have resulted from the defective valve or a manipulation of same."

"30. That the drain pipe above the defective O S & Y Valve on Riser # 6 was not of sufficient size to carry off such water as might pass through said valve if the same was fully open."

"34. That from the time that Walsh & Burney Company received the Conroy Building from Joske Bros. Company, said O S & Y Valve on Riser # 6 continuously leaked."

We have concluded the trial judge erred in holding, as a part of his finding No. 13, "that in entering the basement of the Conroy Building and in doing all of the things which he did there, the said Staats was acting within the scope of his employment and that his employer was liable for all of his negligence * * *." One of the things which Staats did in the Conroy Building and the all important thing, so far as this suit is concerned, was to attempt to close the O S & Y valve in riser No. 6, and in doing this he turned aside from his employer's business and engaged in a purely personal undertaking. The remarkable thing here is that this statement is in effect concurred in by all the appellees herein.

In appellee Joske's brief we find the following statement: "The ADT employee, however, went through the Joske Bros. Co. store looking at the other risers, and although he states he was personally familiar with the fact that the Conroy Building Sprinkler system had been disconnected from the ADT device and could not have caused the alarm, and although he knew the notice was posted on the board at the ADT office that it no longer had jurisdiction over the system in the Conroy Build-

ing, he went to the wall next to the Conroy Building and heard a small whispering sound as if water were escaping. He, therefore, went up to another floor and by a circuitous route got into the wrecked Conroy Building and found the system, all of which had been wrecked almost down to a short distance above the cut-off valve in the riser. There was escaping through the valve and running back into the draining system designed therefor, a small trickle of water which obviously was doing no harm whatever, just as had been going on for some time. He took hold of the great wheel, which of course gives powerful leverage, and twisted it, breaking loose the valve and permitting the water to escape in great volume."

Appellee Walsh & Burney Company contends as follows:

"The trial court did not find that ADT roundsman had a right to go into the Conroy Building, and Walsh & Burney did not at any time concede that the ADT roundsman had a right to go upon the premises. On the contrary the undisputed testimony shows that the roundsman was a trespasser, insofar as Walsh & Burney was concerned, and as a trespasser, Walsh & Burney owed him no duty."

"Not only does the Walsh & Burney pleading brand the roundsman as a trespasser, but the undisputed evidence shows that as to Walsh & Burney, the roundsman was a trespasser, * * *."

Appellee Sid Katz, Inc., argues as follows:

" * * * The evidence is further clear to the effect that this riser No. 6 was entirely disconnected from the sprinkler system of the ADT Company and that its agent went out of his way when he attempted to further close this valve. * * *

"These instruments had been removed from riser No. 6, and it had been completely disconnected from the sprinkler system and the ADT had no more jurisdiction over it than would any man who had walked in there from the street."

█ We agree with these contentions and find that the A. D. T. had no jurisdiction or control over riser No. 6, and that when Staats tampered with the valve in this riser he left the scope of his employment with A. D. T., both actual and apparent, and engaged in a purely personal matter for which his employer cannot be held responsible.

█ In 3 C.J.S., Agency, § 255, p. 187, it is stated: "If the agent steps aside from the principal's business, for however short a time, to do acts not connected with such business, the relation of agency and the agent is for that time suspended, and the agent is not acting within the scope of his employment."

In support of this text is cited Hardeman v. Williams, 150 Ala. 415, 43 So. 726, 727, 10 L.R.A.,N.S., 653, where we find the law very clearly stated:

"If the servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant for the time is suspended. * * *

"While these rules are well understood generally, yet confusion now and then appears, from the failure to keep in mind the distinction between the act done by the servant within the scope of, and the act done during, his employment."

See also 2 Tex.Jur. § 149, p. 552; Payne v. Tisdale, Tex.Civ.App., 232 S.W. 881; Grubb v. Galveston, H. & S. A. R. Co., Tex. Civ.App., 153 S.W. 694; San Antonio & A. P. R. Co. v. Belt, Tex.Civ.App., 46 S.W. 374.

Staats having no jurisdiction (as suggested by Joske) or being a trespasser (as suggested by Walsh & Burney Co.), or having gone out of his way and having no more jurisdiction than a man from the street (as suggested by Sid Katz, Inc.), was on a mission of his own and had left the scope of his employment when he attempted to turn the valve on riser No. 6, which he knew was entirely disconnected from the sprinkler system and therefore the A. D. T. was not responsible for the damage he caused thereby.

The judgment of the trial court, in so far as it grants a recovery against A. D. T. will be reversed and judgment here rendered that Sid Katz, Inc., take nothing as against A. D. T. and that A. D. T. recover its costs in this and the court below. In all other respects the judgment is affirmed.